FILED

2016 Feb-23  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TERONA FAYE CUNNINGHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO.  2:14-CV-1927-SLB** |
| ) | |
| **CAROLYN  W.  COLVIN,  Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Terona Faye Cunningham brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision denying her application for a period of disability and disability insurance benefits [DIB].  Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

On August 15, 2011, Ms. Cunningham protectively filed a Title II application for a period of disability and DIB, alleging that she became unable to work on February 1, 2011. (Doc. 7-3 at R.21; doc. 7-6 at R.141.)[1]  She reported that was unable to work because of

---

[1]Reference to a document number, ["Doc."], refers to the number assigned to each document as it is filed in the court's record. Reference to a page numbers in the Commissioner's record, ["R."], refers to the page number assigned to the record by the Commissioner.

"bursitis in hips causing pain in [her] back and legs pain," "tendini[tis] in [her] hands and arms," and "arthritis/gout in feet."  (Doc. 7-7 at R.171.)

The Social Security Administration denied her application initially, and Ms. Cunningham requested a hearing before an Administrative Law Judge [ALJ].  (Doc. 7-4 at R.74; doc. 7-5 at R.91.)  The hearing before the ALJ was held on April 16, 2013.  (Doc. 7-3 at R.21.)

After the hearing, the ALJ issued an unfavorable decision on May 10, 2013.  (Doc. 7-3 at 21-29.)  Ms. Cunningham asked the Appeals Council to review the ALJ's decision. (*Id.* at R.15.)  The Appeals Council denied Ms. Cunningham's request for review of the ALJ decision, stating that it "found no reason under [its] rules to review the [ALJ's] decision." (*Id.* at 1.)  Therefore, "the [ALJ's] decision is the final decision of the Commissioner of Social Security in [Ms. Cunningham's] case."  (*Id.*)

Ms. Cunningham filed an appeal in this court on October 9, 2014.  (Doc. 1.)

## II.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings and reviews questions of law de novo.  *Cornelius v.*

*Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for DIB. *See* 20 C.F.R. § 404.1520; *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB benefits] if he is unable to

3

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The specific steps in the evaluation process are as follows:

**1. Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful employment." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[2] 20 C.F.R. § 404.1572. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. §

---

[2]The regulation provides:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572(a)-(c).

4

404.1520(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[3]

The ALJ found that Ms. Cunningham had not engaged in substantial gainful activity during the period from her alleged onset date of February 1, 2011, through her date last insured of December 31, 2011. (Doc. 7-3 at R.23.)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c). "An impairment can be

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Cunningham had severe impairments of "obesity, gout, mild lumbar degenerative disc disease, trochanteric bursitis, and iliotibial band tendinitis." (Doc. 7-3 at R.23). Also, the ALJ found Ms. Cunningham had non-severe impairments of hypertension and migraine headaches; lupus was "not a severe medically determinable impairment during the period at issue," and "chronic pain syndrome [was] not a medically determinable impairment," but it was an apparent symptom of her severe impairments. (*Id.* at R.23-24).

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful

activity. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Cunningham "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Doc. 7-3 at R.24.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity [RFC] with the physical and mental demands of [her] past relevant work. 20 C.F.R. § 404.1560(b). Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for her to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled. 20 C.F.R. § 404.1520(e). The claimant bears the burden of establishing

that her impairment prevents her from performing past work.  *Reynolds-Buckley*, 457 Fed.

Appx. at 863.

The ALJ found:

[T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except the claimant is limited to standing/walking four hours in an eight-hour workday and sitting four hours in an eight-hour workday.  She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but [she can] never climb ladders, ropes, or scaffolds.  Additionally, she must avoid concentrated exposure to vibration.

(Doc. 7-3 at R.24.)   Based on his finding regarding her RFC and the testimony of a

vocational expert [VE], the ALJ found that Ms. Cunningham was unable to perform her past

relevant work as a warehouse worker-store laborer.  (*Id*. at R.27-28.)

## 5.  Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the

Commissioner must show that the claimant – in light of her RFC, age, education, and work

experience – is capable of performing other work that exists in substantial numbers in the

national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. §

404.1520(c)(1).  The regulations provide:

(1) If we find that your residual functional capacity does not enable you to do any of your past relevant work . . ., we will use the same residual functional capacity assessment when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience, as appropriate in your case.  . . .  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

(2)  In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors.  We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.

*Id*. (c)(1)-(2).   If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(g).

The ALJ found that Ms. Cunningham, who was born in 1962, was a "younger individual" on the date last insured, and that she had at least a high school education and could communicate in English.  (Doc. 7-3 at R.28.)  The ALJ consulted a VE; the VE testified that an individual with Ms. Cunningham's RFC and vocational factors could perform the jobs of cashier, sales attendant, and marker, and these jobs existed in significant numbers in the national economy.  (*Id*. at R.28-29.)  Based on this testimony, the ALJ found Ms. Cunningham could perform other work.  (*Id*. at 29.)

Therefore, the ALJ found that Ms. Cunningham had not been under a disability at any time from February 1, 2011, the alleged onset date, through December 31, 2011, the date last insured.  (*Id*.)

## B.  ISSUES ON APPEAL

Ms. Cunningham states her issue on appeal as follows:

Whether the Final Decision of the Commissioner of the Social Security Administration denying benefits to plaintiff is supported by substantial evidence and whether improper legal standards were applied –

specifically, the ALJ erred in failing to develop the record to obtain a medical opinion; and the record including the ALJ's own RFC findings support a finding of disabled under the MVR.

(Doc. 1 at 1.)  For the reasons set forth below, the court finds that the decision to deny Ms. Cunningham's claim for a period of disability and DIB will be affirmed.

### 1.  Medical Vocational Rules – "The Grids"

Ms. Cunningham contends that "The record including the ALJ's own RFC findings support a finding of [']disabled['] under the medical vocational rules." (Doc. 11 at 8.) She argues:

> The ALJ recognized the RFC did not represent a full range of light work (R. 28). The four hour sitting and stand/walk restrictions do not comport with the exertional requirements of light work, requiring six hours stand/walking, or for that matter even with sedentary work requiring six hours sitting pursuant to 20 C.F.R. 404.1567 and SSR 83-10.

> With further reduction of postural functioning to occasional (R. 24), the ALJ's RFC findings would better comport with sedentary work.

> Limited to even the full range of sedentary work, for an individual of closely approaching advanced age, with a high school education, unable to perform unskilled past work the "grid" rules, namely Rule 201.14 would have applied non mechanically at the [date last insured].

> Pursuant to 20 C.F.R. 404.1563(b), SSA "will not apply the age categories mechanically … if you are within a few days to a few months of reaching an older category …"

> Appeals Council Interpretation II-5-302 (effective Mar. 16, 1979) stating that "[g]enerally, establishing an onset date up to six months prior to attainment of the specified age would be reasonable."

(*Id*. at 8-9.)  As the court understands this argument, Ms. Cunningham contends the ALJ erred in not applying the grid rule for individuals of closely-approaching advanced age who are limited to sedentary work.

With regard to the grids, the Supreme Court held:

> Prior to 1978, the Secretary relied on vocational experts to establish the existence of suitable jobs in the national economy.  After a claimant's limitations and abilities had been determined at a hearing, a vocational expert ordinarily would testify whether work existed that the claimant could perform.  Although this testimony often was based on standardized guides, see 43 Fed. Reg. 9286 (1978), vocational experts frequently were criticized for their inconsistent treatment of similarly situated claimants.  See *Santise v. Schweiker,* 676 F.2d 925, 930 (CA3 1982); J. Mashaw et al., Social Security Hearings and Appeals 78-79 (1978).  To improve both the uniformity and efficiency of this determination, the Secretary promulgated medical-vocational guidelines as part of the 1978 regulations.  See 20 C.F.R. pt. 404, subpt. P, app. 2 (1982).

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy.  They consist of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.  Where a claimant's qualifications correspond to the job requirements identified by a rule, [footnote] the guidelines direct a conclusion as to whether work exists that the claimant could perform.  If such work exists, the claimant is not considered disabled.

> > Footnote:  The regulations recognize that the rules only describe "major functional and vocational patterns."  20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a).  If an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered.  See app. 2, §§ 200.00(a), (d).  Additionally, the regulations declare that the Administrative Law Judge will not apply the age categories "mechanically in a borderline situation," 20 C.F.R. § 404.1563(a), and recognize that some claimants

11

> may possess limitations that are not factored into the guidelines, see app. 2, § 200.00(e).  Thus, the regulations provide that the rules will be applied only when they describe a claimant's abilities and limitations accurately.

*Heckler v. Campbell*, 461 U.S. 458, 461-62 and n.5 (1983)(other footnotes omitted).

For the reasons set forth below, the court finds use of the grids was not proper in this case and the ALJ's determinations, that Ms. Cunningham was able to perform a limited range of light work and that she was a younger individual on the date last insured, are due to be affirmed.

### a. Exertional Limits

As set forth above, Ms. Cunningham contends that the RFC, as determined by the ALJ, "better comport[s] with sedentary work."  (Doc. 11 at 8.)  The court disagrees.

The regulations provide:

> .  .  .   In making disability determinations under this subpart, [the Commissioner] use[s] the following definitions:
>
> (a) Sedentary work.  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  .  .  .

20 C.F.R. § 404.1567(a)-(b).

The ALJ stated, "I conclude that the claimant can at least perform work activities at the light exertional level based on her relatively normal upper and lower extremity strength and range of motion." (Doc. 7-3 at R.26.)  He found Ms. Cunningham –

> should only stand/walk for four hours in an eight-hour workday and sit four hours in an eight-hour workday in order to avoid exacerbation of her hip and back pain.  Any changes of position are accommodated by normal breaks and appropriate alternation during the workday.  Additionally, the claimant should avoid concentrated exposure to vibration because vibration can exacerbate the claimant's hip and gouty arthritis.  Moreover, due to her impairments, she should only perform occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs.

(*Id.* at R.26.)  These findings are supported by substantial evidence.  Contrary to Ms. Cunningham's assertion, the court does not find that these limitations "better comport" with work at a sedentary level; rather given the lack of limitation on her ability to lift and to carry, the court finds that the exertional limitation falls somewhere between light and sedentary.

A Commissioner's Ruling provides:

> 2.  If the exertional level falls between two [grids] rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:

> a.  An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."

> b.  On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS [vocational specialist] assistance is advisable for these types of cases.

SSR 83-12, 1983 WL 31253, *2-3.

In this case, because the RFC, as determined by the ALJ, fell somewhere between light and sedentary work, the use of a VE or VS to determine the occupational base was required. Use of the Medical-Vocational Rules based on Ms. Cunningham's ability to perform a full range of sedentary work would not have been appropriate.

### b. Age as a Vocational Factor

Ms. Cunningham contends that the ALJ should have considered she was "closely approaching advanced age" because the date last insured was within a few months of her fiftieth birthday. (Doc. 11 at 4, 9.) In this Circuit, a claimant arguing to be treated at a different level than her chronological age, "must proffer evidence tending to establish that fact." *Miller v. Comm'r of Soc. Sec.,* 241 Fed. Appx. 631, 635 36 (11th Cir. 2007)(citing *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984). Simply arguing that she should be treated differently because of her imminent birthday is insufficient. *Id.* (citing *Patterson v. Bowen*, 799 F.2d 1455, 1458-59 (11th Cir. 1986)). Nothing in Ms. Cunningham's brief "suggests that [her] ability to adapt to new work environments was less than the level established under the grids for persons [her] age." *Id.*

14

Therefore, the court finds no error in the ALJ's determination that Ms. Cunningham was a younger individual on the date last insured.

### c. Vocational Expert

The ALJ's determination that Ms. Cunningham was not disabled was based in part of the testimony of a VE.  The VE testified as follows:

Q.  So Dr. Green, I'd ask you to consider the following hypothetical. Assume I had a younger individual with a high school education and the past relevant work experience we've just identified.  And further assume that individual was limited to the full range of light work; however they should never climb ladders, ropes or scaffolds; and the remaining posturals, to include balance, are occasional.  Further assume they should avoid concentrated exposure to vibration.  Would such a hypothetical person be able to do any of the past relevant work?

A.  No.

Q.  Would there be other jobs for such a person?

A.  There are light and unskilled jobs consistent with the hypothetical. Cashier, light, SVP: 2, the <u>DOT</u> code is 211.462-010.  16,000 jobs in Alabama; 800,000 nationally.  There are sales attendant jobs that are light and unskilled, SVP: 2.  [DOT code] 299.677-010.   2,500 jobs in Alabama; 190,000 nationally.  And there are assembler jobs, such as electrical assembler.  [DOT code] 729.687-010.  There are 1,500 jobs in Alabama; and 60,000 nationally. All of those are light, SVP: 2.

Q.   And if I assume as a second hypothetical the exact same hypothetical individual, the same past relevant work and high school education, but I assume the maximum they can stand and walk in a given day is four hours.  They can sit for the remaining four hours of the day.  They can lift and carry at the light rate.  So it's a reduced range of light in that they're limited to four and four for standing and walking and sitting. Does that change your answer with regards to those jobs?

A.  It does.

15

Q. Everything else remains the same.  So with regards to the jobs you just identified, do they remain?

A.  I would give reduced numbers for the cashier job.  1,500 jobs in Alabama; 40,000 nationally.  And those are cashier jobs in confined settings where a person can actually perform them standing or sitting.  There, and I would reduce the sales attendant job to 800 jobs in Alabama; 60,000 nationally.  And those are jobs at kiosk and places where a person could occasionally, could occasionally sit.  And I would, I would say that there are marker jobs [DOT code 209.587-034] that are light, SVP: 2, that enable a person to sit part of the day.  And this is a reduced number, less than 25 percent.  That would leave 1,000 in Alabama; 70,000 nationally.

(Doc. 7-3 at R.61-62.)  The ALJ relied on this testimony to determine that there were a significant number of jobs that Ms. Cunningham could still perform despite her limitations.

The court agrees with the Commissioner in that the ALJ properly relied on the grids as only a framework for decision-making and on the VE's testimony to find at step five that Ms. Cunningham was not disabled because a person with her same characteristics could perform a significant number of jobs in the national economy, and substantial evidence supports that finding.

Therefore, the court will affirm the decision of the Commissioner on this ground.

### 2.  Medical Expert

Ms. Cunningham contends, "The sole issue before the ALJ was whether disability could be established prior to the expiry of claimant's DLI [date last insured] on December 31, 2011.  The ALJ *could* have utilized a medical expert (ME) pursuant to SSR 83-20 in this endeavor."  (Doc. 1 at 5 [emphasis added].)  The court notes that the decision of the Commissioner will not be reversed simply because a claimant contends the ALJ could have

16

done something different or something more.  In order to reverse the Commissioner's decision, this court must find either (1) the decision is not supported by substantial evidence or (2) the ALJ applied an incorrect legal standard.  *See Wilson*, 284 F.3d at 1221.  In this case, the court finds no reason to reverse the Commissioner's decision.

The ALJ found that Ms. Cunningham was not disabled prior to the date last insured.  In making this finding, the ALJ considered Ms. Cunningham's medical record for the relevant period.  These records showed limited treatment and good results from medication and other treatment.  (Doc. 7-3 at R.25-26; *see also* doc. 7-8 at R.215, R.234-37, R.245-47, R.251, R.254-55.)  The ALJ also considered Ms. Cunningham's statements and testimony regarding her limitations during this period.  He found she "provided extreme limitations of her activities of daily living and functional abilities," – including the fact that she asserted "her disabled husband, who is in considerable pain," did all the household chores – that were not supported by the record.  (Doc. 7-3 at 26 [emphasis deleted].)  Therefore, the ALJ found "the credibility of the claimant's allegations [of disabling pain was] substantially weakened through exaggeration and inconsistency."  (*Id*. at R.27.)  These findings are supported by substantial evidence.

The ALJ found that Ms. Cunningham retained the ability to perform a limited range of light work during the period between her alleged onset date and the date last insured.  He presented these limitations and Ms. Cunningham's vocational factors to the VE, who testified that an individual with Ms. Cunningham's RFC and vocational factors could perform the jobs

17

of cashier, sales attendant, and marker.  Therefore, the ALJ determined that Ms. Cunningham was not disabled during the period February 2011 through December 2011.

Contrary to plaintiff's contention, SSR 83-20 does not, as a matter of law, require the use of a Medical Expert in this case because the ALJ found that Ms. Cunningham was not disabled before the date she was last insured.  In an unpublished opinion, the Eleventh Circuit held, "The plain language of SSR 83-20 indicates that it is applicable *only after* there has been a finding of disability and it is then necessary to determine when the disability began."  *Caces v. Commissioner of Social Security*, 560 Fed. Appx. 936, 939 (2014). Because the ALJ found that Ms. Cunningham was not disabled between February and December 2011, and because that finding is supported by substantial evidence, the court finds the ALJ did not commit legal error by failing to use a Medical Expert to determine an onset date.

Ms. Cunningham also argues that the ALJ *could* have used a Medical Expert to show that certain signs and symptoms were attributable to lupus, which was diagnosed after the date last insured, and to explain how her obesity caused or contributed to exertional limitations.  (Doc. 11 at 7-8.)  No doubt the ALJ could have used a Medical Expert in these and many other ways; nevertheless, his failure to call upon a Medical Expert in this case was not an error of law.  *See Fancher v. Astrue*, Case No. CV-11-S-4173-W, 2012 WL 4737136, *3 (N.D. Ala. Sept. 27, 2012).  The ALJ's decision regarding Ms. Cunningham's limitations on her ability to work during the relevant time period – February 2011 to December 2011 –

18

is supported by substantial evidence and his failure to utilize a Medical Expert was not an error of law.

Therefore, the court finds no reason to reverse the decision of the Commissioner on the basis that the ALJ did not utilize a Medical Expert.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 23rd day of February, 2016.

SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE